RECEIVED
OCT 16 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHARLES KENWORTHY | CIVIL ACTION NO: 13-2160 |
| VERSUS | JUDGE DONALD E. WALTER |
| GLOBAL SANTA FE OFFSHORES, INC. | MAG. JUDGE MARK L. HORNSBY |

## MEMORANDUM RULING AND ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant Global Santa Fe Offshore Services, Inc. ("Global").[1] [Doc. #19]. Global argues that it is entitled to summary judgment based on Plaintiff's failure to file a timely charge with the Equal Employment Opportunity Commission ("EEOC"). Alternatively, Global moves for summary judgment under the Americans with Disabilities Act ("ADA"), because Plaintiff could not obtain a medical certification from the United States Coast Guard and was therefore not qualified for his position. Plaintiff Charles Kenworthy opposes the motion. [Doc. #27], and Global has filed a reply. [Doc. #28].[2] For the reasons that follow, Global's Motion for Summary Judgment [Doc. #19] is hereby **DENIED**.

## STATEMENT OF THE CASE

Plaintiff Charles Kenworthy was employed by Defendant Global from 1985, when he was originally hired as a roustabout, until 2011, when he was terminated from his position as a deck

---

[1] Global is an indirect, wholly-owned subsidiary of Transocean, Ltd. Certain communications reflected in the docket appear to have originated with Transocean, rather than Global; however, the Court understands that to be a distinction without a substantive difference, for purposes of the instant ruling.

[2] The Court hereby **GRANTS** Global's Motion for Leave to File Reply to Opposition to Motion for Summary Judgment [Doc. #28]. The reply brief and all attachments thereto have been duly considered in ruling on the instant motion.

pusher off the coast of Brazil. As a deck pusher, Plaintiff organized the deck for incoming cargo and supervised the crane department crew, which included assessing that department's needs and ensuring the safety of the crew members therein. Plaintiff is also an insulin-dependent diabetic and claims that his employment was terminated due to his disability and/or being regarded as disabled.

Plaintiff was originally diagnosed with type 2 diabetes in July of 1999 but was later diagnosed with type 1 diabetes, requiring Plaintiff to take insulin. It is undisputed that Plaintiff was originally placed on short-term medical leave on July 21, 2010, based on Global's belief that Plaintiff's diabetes rendered him unfit for offshore employment.[3] At some point thereafter, Plaintiff was placed on long-term disability leave.[4] During an appointment with his personal doctor, Robert Ewing, on January 26, 2011, Plaintiff advised Dr. Ewing that Global had placed him on "permanent medical leave" and that Global was in the process of terminating his employment. Thereafter, Plaintiff sought a medical waiver from the United States Coast Guard. In response to that request, the Coast Guard sent Plaintiff a letter dated March 14, 2011, in which Plaintiff was advised that additional information was required and must be submitted by Plaintiff within sixty (60) days. Plaintiff does not dispute that he received that letter, yet he did not provide the information requested

---

[3] Plaintiff's affidavit states that Global's July 21, 2010 determination that Plaintiff was not fit for offshore employment was based on a letter dated December 15, 2010 from Dr. Jose Acevedo. *See* Doc. #27-2. Dr. Acevedo's affidavit reflects that he conducted a fitness for duty determination on Kenworthy on November 11, 2010. *See* Doc. #19-16. The Court notes some discrepancy in the dates; however, it is also noted that Global describes Dr. Acevedo's determination as an "updated opinion regarding Kenworthy's fitness to work offshore." *See* Doc. #19-2, p. 3. Presumably, there was an earlier exchange of information which led to Global's discovery of Plaintiff's type 1 diabetes. Plaintiff's application for long term disability benefits reflects that he saw a "company doctor," by the name of Marize M. Pereira, on July 19, 2010. *See* Doc. #28-4, p. 5. Neither party raises this issue and Plaintiff does not dispute the fact that he has type 1 diabetes; instead, he argues that it is under control and does not render him unfit for offshore employment. Thus, the Court merely notes the discrepancy for the record.

[4] Plaintiff was placed on long-term disability leave at some point between December 23, 2010 [*See* Doc. #19-10] and January 26, 2011, when Plaintiff advised Dr. Ewing that Global had placed him on permanent medical leave and was in the process of terminating him. [Doc. #19-6, pp. 10-11].

by the Coast Guard. Thereafter, on April 5, 2011, pursuant to Plaintiff's request, two doctors signed a letter on behalf of Transocean, stating that the requirements of offshore work were not compatible with Plaintiff's medical treatment.

The effective date of Plaintiff's termination was July 20, 2011, as communicated via the "Termination of Leave of Absence Information Notice" dated July 7, 2011. On May 10, 2012, Plaintiff filed a Charge of Discrimination with both the EEOC, as well as the Louisiana Commission on Human Rights. Plaintiff then received his Notice of Right to Sue on April 17, 2013, and the instant lawsuit was commenced on June 28, 2013.

## SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.[5] An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue can be resolved only by a trier of fact because it may be resolved in favor of either party. *Id.* at 248-49. A fact is "material" if it can "affect the outcome of the suit under the governing law." *Id.* Facts that are irrelevant or unnecessary for determination of the suit should not be considered. *Id.* The substantive law will determine which facts are "material." *Id.*

The burden of proof in a summary judgment proceeding is on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). When a defendant moves for

---

[5] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

summary judgment on the plaintiff's claim, he may satisfy the summary judgment burden in one of two ways: (1) show there is no evidence to support an essential element of the plaintiff's claim, or (2) submit summary judgment evidence that negates one of the essential elements of the plaintiff's claim. *Celotex*, 477 U.S. at 322-24; *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). If the motion is properly made, the plaintiff "must set forth facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The plaintiff "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The court is to resolve all reasonable doubts about the facts in favor of the plaintiff. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

### Timeliness of the EEOC Charge

As a precondition to seeking judicial relief, Title VII requires a complaining employee to first exhaust all administrative remedies. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). In a discrimination case, the district court does not have subject matter jurisdiction until the "EEOC has first had the opportunity to obtain voluntary compliance." *Id.* at 789. Private sector employees, such as Plaintiff, satisfy this exhaustion requirement by filing an administrative charge with the EEOC. *Id.* at 788 n. 6; 42 U.S.C. § 2000e-(5)(b) (2005). Louisiana is known as a "deferral state," which, for purposes of this motion, means that an EEOC charge must be filed within 300 days after the alleged unlawful employment practice occurred. *See Conner v. Louisiana Dept. of Health and Hospitals*, 247 F. App'x 480, 481 (5th Cir. 2007) (citing *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000)).

Here, it is undisputed that Plaintiff filed his EEOC charge on May 10, 2012. The timing

dispute revolves around the date upon which the 300-day window for filing commenced. Both parties agree that the outer edge of the 300-day window falls on July 15, 2011, such that Plaintiff's EEOC charge is only timely if the limitations period commenced on or after that date. Global argues various triggering dates, beginning as early as July 21, 2010, when Plaintiff was placed on medical leave of absence not to exceed one year, and as late as July 7, 2011, when Global claims that Plaintiff was notified via email and regular mail that his effective date of termination would be July 20, 2011. On the other hand, Plaintiff generally disputes the various dates offered by Global and argues that the only probative evidence in the record is the letter purporting to show that Transocean made the decision to terminate Plaintiff on July 7, 2011. However, Plaintiff claims that there is no evidence showing the date upon which Plaintiff received said letter. Plaintiff points to the postal stamp, on the outside of the envelope which allegedly contained the letter, to show that it was received by the United States Postal Service in a Houston, Texas zip code on July 14, 2011.[6] Thus, Plaintiff represents that the absolute earliest date that Plaintiff could have received the letter at his residence in Columbia, Louisiana would have been the next day, July 15, 2011.

The allegedly unlawful employment practice of which Plaintiff complains is his termination, which became effective on July 20, 2011.[7] However, the Fifth Circuit has stated that "[t]he date when the employee receives notice of termination, and not the final date of employment, is the date from which the limitation period begins to run." *Allen v. County of*

---

[6] Global disputes whether this is the envelope in which the termination letter was transmitted.

[7] Although both parties reference the relevant date as being July 21, 2011, it is clear from Transocean's "Termination of Leave of Absence Information Notice" that the leave of absence period ended on July 20, 2011, effectively ending Plaintiff's employment on that date. *See* Doc. #19-15, Defendant's Exh. M ("Your leave of absence period began on 7/21/10 and ends on 7/20/2011. As a result of reaching your leave of absence end date, your employment with the Company will end on 7/20/2011.")

*Galveston, Texas*, 352 F. App'x 937, 939 (5th Cir. 2009) (citing *Elliott v. Group Medical & Surgical Serv.*, 714 F.2d 556, 563 (5th Cir. 1983)). Thus, the relevant question is not when Plaintiff's termination became effective but when Plaintiff received notice of his termination.

"Determination of when notice has been communicated to an employee is based upon an objective standard, focusing upon when the employee knew, or reasonably should have known, that the adverse employment decision had been made." *Clark v. Resistoflex Co., A Div. Of Unidynamics Corp.*, 854 F.2d 762, 765 (5th Cir. 1988)(determining the date of notice of termination in an age discrimination case arising under the ADEA). Although Plaintiff admits that he believed, that Global had decided to terminate him as early as July of 2010, there is no evidence purporting to show that Global advised Plaintiff of that decision prior to the July 7, 2011 notice. Instead, Plaintiff's belief that he was being terminated was based on his "intuition" and the fact that the decision would be based on his status as a diabetic, which was not going to change.[8] Global urges this Court to apply a presumption that Plaintiff received the termination notice prior to July 15, 2011, based on the date of the notice itself as well as the inclusion on the face of the notice of an email address purporting to be that of Plaintiff. However, Global has failed to come forward with any proof that the notice was actually placed in the care of the U.S. Postal Service or transmitted via email, much less the dates thereof. Global therefore cannot benefit from such a presumption and has failed to show that Plaintiff received notice of Global's termination decision prior to July 15, 2011. Accordingly, the EEOC charge was timely filed on May 10, 2012.

### Failure to Obtain Medical Certification

In the alternative, Global urges the Court to grant summary judgment based on the fact

---

[8] Doc. #19-6, pp. 11-12.

that Plaintiff was not qualified for his position, which is fatal to his claim under the ADA. To prevail on his ADA claim, Plaintiff must establish that (1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him because of his disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). Global argues that the United States Coast Guard requires that all offshore workers obtain a medical certification from the Coast Guard and that Plaintiff's inability to qualify therefor rendered him unfit for offshore employment. Plaintiff, on the other hand, disputes whether any Coast Guard regulation made him unqualified for his position and further disputes whether the United States Coast Guard even had jurisdiction over Plaintiff while he worked as "a deckpusher off of the coast of Brazil on a Vanuatu ship owned by a Cayman Island company."[9]

Counsel has provided the Court with nothing more than conclusory allegations in support of its motion for summary judgment. Despite Global's representation that "United States Coast Guard regulations specifically require a medical certification for deckpushers who work offshore[,]" the Court does not find the cited regulations to contain such clear specifications. Indeed, the specific term "deck pusher" is not readily found anywhere in the cited regulations. The Court declines to, first, decipher which regulations are or are not applicable to Plaintiff, and next, speculate as to which position listed in the regulations is most synonymous with Plaintiff's position as "deck pusher."[10] The Court simply has not been provided with clear authority upon which to make such determinations.

---

[9] Doc. #27-1, p. 5.

[10] *See* Doc. #19-6, pp. 8-9 (In response to counsel's inquiry regarding whether or not "you have to have a Coast Guard license to travel offshore," Plaintiff responded "Some do, some don't. I did, but.[sic]" Counsel then inquired: "Your position required a Coast Guard license[,]" to which Plaintiff responded "No, ma'am. I don't think. Because they was [sic] some that didn't have it.").

## CONCLUSION

As the Court is bound to draw all justifiable inferences in Plaintiff's favor at the summary judgment stage, the Court finds that genuine issues remain as to Plaintiff's qualification for his position and the relative applicability of individual Coast Guard regulations. For the reasons stated herein, Defendant's Motion for Summary Judgment [Doc. #19] is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 16 day of October, 2014.

*/s/ Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE